**SIGNED THIS: August 21, 2008**

_____
**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | In Bankruptcy |
| JOSHUA TODD SHARP, | ) | |
| | ) | Case No. 07-72222 |
| Debtor. | ) | |

## O P I N I O N

This case comes before the Court for decision after trial on confirmation of the Debtor's Amended Chapter 13 Plan ("the Amended Plan") and the objections of the Chapter 13 Trustee ("Trustee") thereto.   Having considered the testimony of the Debtor, the exhibits introduced at trial by both the Debtor and the Trustee, and the arguments of counsel, the Court finds that the Amended Plan should be confirmed with certain modifications described herein.

Joshua Todd Sharp ("Debtor") filed his voluntary petition

-1-

under Chapter 13 of the Bankruptcy Code on October 26, 2007.  On November 8, 2007, the Debtor filed his Statement of Financial Affairs, schedules, Form B22C - Statement of Current Monthly and Disposable Income ("B22C"), and Chapter 13 Plan.  The Trustee filed an Objection to Confirmation on December 21, 2007.  The Debtor filed the Amended Plan and several amended schedules on February 29, 2008.  The Trustee filed an Objection to Confirmation of the Amended Plan on March 14, 2008, and a Supplemental Objection to Confirmation on April 9, 2008.   Trial on confirmation of the Amended Plan and the Trustee's objections thereto was held on May 22, 2008.

Debtor is self-employed as a Tae Kwon Do instructor.  At the time of filing, he operated two Tae Kwon Do schools, having scaled back from previously operating at four locations.  Debtor's schedules disclosed ownership of $1,500 of martial arts equipment and $200 of inventory.   Debtor's wife, who did not join in the filing, is employed as a nurse.

The Debtor filed his B22C in accordance with the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  As the Trustee points out in his Supplemental Objection, the B22C form is a key document in Chapter 13 cases because it is used to calculate "current monthly income" which, in turn, is used to determine the applicable commitment period or required term of the plan, the methodology for calculating

-2-

disposable income and, in some cases, disposable income.

The Debtor's B22C disclosed that, for the six-month period prior to filing, the Debtor had income after expenses from his Tae Kwon Do instruction of $325 per month. Debtor's wife had income of $3,783.97 per month during the same period. At Part II of the B22C, the Debtor multiplied the sum of his income and his wife's income - $4,108.97 - by 12 to obtain annualized current monthly income of $49,307.64. He then compared that amount to $54,979, which was the median annual income for a family of two in Illinois at the time of filing. Because his annualized income was less than the comparable family median income, the Debtor reported that his applicable commitment period for his Plan payments would be three years.

At Part III of the B22C used to determine the methodology for calculating disposable income, Debtor again listed $4,108.97 as the combined average monthly income of his wife and himself for the six-month period prior to filing. From that number, however, he subtracted $3,783.97 as a "marital adjustment" thereby representing that his wife's income was not paid on a regular basis for the household expenses of the Debtor or his dependents. This resulted in $325 in income remaining which, when multiplied by 12, yields an annualized amount of $3,900. When compared to the $54,979 applicable family median income for a household of two in Illinois, Debtor obviously fell far below the median. This

-3-

resulted in the Debtor reporting that his disposable income would not be calculated under §1325(b)(3) and that he was not obligated to complete Parts IV, V, and VI of the B22C.

Debtor filed his initial Schedules I and J on November 8, 2007.  On his Schedule I, Debtor disclosed net income from his Tae Kwon Do instruction of $325 per month and listed his wife's monthly income after taxes as $3,360.  This resulted in total joint income of $3,685 per month.  On his Schedule J, Debtor listed $3,660 of total household expenses, resulting in net disposable income of $25 per month.

Debtor filed Amended Schedules I and J on February 29, 2008. On his Amended Schedule I, Debtor increased his net income from his business to $1,750 per month.  His wife's after-tax income from employment was shown as $2,587 per month, and it was disclosed that she receives $563 per month in child support.  Thus, total joint income was increased to $4,900 per month.  Amended Schedule J listed $4,800 in expenses resulting in net disposable income of $100 per month.

Debtor's Amended Plan acknowledges four monthly payments of $25 each already paid to the Trustee and proposes $100 per month payments for the remaining 32 months of the applicable commitment period.  This would yield a total of $3,300 to be paid to the Trustee.  From the payments received, the Trustee is directed to pay the balance of the Debtor's attorney fees in the amount of

-4-

$1,924 and to pay the remainder - estimated to be about $1,046 after Trustee fees - to unsecured creditors.  The Amended Plan also references a potential preference recovery that the Debtor was pursuing and suggests that, if successful, the amounts recovered will be delivered to the Trustee for an additional dividend to unsecured creditors.[1]

The Trustee filed an Objection to the Amended Plan on March 13, 2008.  The Trustee's Objection stated that, based on the most current information he had received, it appeared to him that both the Debtor and his wife were making more than the amounts disclosed on Amended Schedule I and, accordingly, the proposed $100 per month payment did not reflect a commitment of all of the Debtor's projected disposable income.

The Trustee filed a Supplemental Objection to the Amended Plan on April 9, 2008.  Relying on the recently decided case of In re Wiegand, 386 B.R. 238 (9th Cir. BAP 2008), the Trustee asserted that the Debtor was required to use his gross business income without deduction of any business expenses to determine his applicable commitment period and the methodology for calculating disposable income at Parts II and III of the B22C.  The Trustee argued that,

---

[1]

The adversary proceeding to recover the alleged preferential transfer was dismissed on April 2, 2008, on the stipulation of the parties that the Defendant could retain the sums in question. Accordingly, no additional monies will be paid to unsecured creditors from that source.

if the Debtor had used his actual gross business receipts of $3,000 per month rather than the net figure of $325 per month, he would have had annualized current monthly income in excess of the comparable family median and, therefore, would be subject to a five-year applicable commitment period and would have been required to complete Parts IV, V and VI of the B22C to calculate disposable income.

At trial, the Trustee also raised the issues of whether the Amended Plan met the liquidation analysis test of §1325(a)(4) and whether the use of the "marital adjustment" in Part III of the B22C was allowable. As neither of these objections were raised in the Trustee's written Objections, the Court would have disallowed evidence and argument on these issues if the Debtor had objected. Debtor's counsel was prepared to address these issues, however, and did not object to the Trustee raising these matters at trial. Because neither issue was fully developed by the Trustee, each will be discussed only briefly before reaching the main issues in the case.

### Liquidation Analysis

The Debtor listed ownership of $1,500 in martial arts equipment and $200 of inventory on his Schedule B. He claimed the martial arts equipment fully exempt as tools of the trade on his Schedule C. *See* 735 ILCS §5/12-1001(d). The Trustee did not

timely object to the Debtor's claim of exemption.  At trial, the Debtor testified that his equipment consisted of a few hundred dollars' worth of mats, some bags valued at $200 - $300, and some shields or targets worth $5 to $10 each.  He also testified that his inventory consisted of uniforms available to be sold to students, and that he generally had no more than $100 of inventory on hand at any given time.

During cross-examination, the Trustee asked the Debtor if the mats could be sold to a gym or to parents of young gymnasts for use at home.  The Debtor stated that he thought that gymnasts generally used larger mats rather than the smaller interlocking mats he had. He further stated that he did not really know enough about gymnastics to be able to state whether his mats could be used in that sport.  The Trustee also had the Debtor identify his 2005 and 2006 income tax returns and, specifically, the depreciation schedules contained in each one.  The Debtor admitted that, over a period of years, he had paid $6,300 for the mats used in his business and had paid a total of $12,626 for all of the equipment he had purchased since 2002.  The Trustee presented no affirmative evidence about the nature, condition, or value of any of the Debtor's equipment.

The Trustee argued at the conclusion of the trial that the Amended Plan does not meet the requirements of the liquidation analysis test of §1325(a)(4).  11 U.S.C. §1325(a)(4).  The Trustee

suggested that, because of the amounts paid for the items of equipment over the years, the Debtor's valuation on his Schedule B and at trial were questionable. The Court disagrees.

Section 1325(a)(4) provides:

(a)  Except as provided in subsection (b), the court shall confirm a plan if -

(4)  the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

11 U.S.C. §1325(a)(4).

Thus, in order to obtain plan confirmation, a hypothetical analysis must be completed to determine what, if anything, a Chapter 7 trustee would be able to distribute to unsecured creditors if a debtor's estate were liquidated. To accomplish that analysis, the value of a debtor's non-exempt property must first be determined. That value is then reduced by (i) the administrative expenses of a Chapter 7 case, including the costs of sale of the non-exempt property, (ii) the amount of all lien claims that would be enforceable against the non-exempt property in the Chapter 7 case, and (iii) the amount of priority claims allowable under Chapter 7 which would be paid with sale proceeds before a distribution to unsecured creditors. *See* In re Trombetta 383 B.R. 918, 924 (Bankr. S.D. Ill. 2008). What remains is the minimum amount that must be paid to unsecured creditors through the Chapter

-8-

13 plan to meet the requirement of §1325(a)(4).

The Debtor's testimony as to the limited amount and value of his business assets was credible.  He claimed the maximum amount of $1,500 exempt, and the Trustee did not object to that exemption. The Trustee's reliance on old depreciation schedules to suggest that the price paid years ago for items is determinative of their value today is misplaced.  Although more than $12,000 was spent since 2002 for business equipment, it is doubtful that items such as a cellular telephone purchased in 2005 for $61 or a shop vacuum purchased in 2006 for $52 would retain much value.

Further, the Trustee does not appear to have considered the expense of liquidating these items or the other administrative costs of a Chapter 7 case.  This Court has cautioned Chapter 7 trustees about pursuing assets of limited value, only to end up with expenses exceeding the proceeds.  *See* <u>In re Minich</u>, 386 B.R. 723, 728-29 (Bankr. C.D. Ill. 2008).  It is doubtful that a Chapter 7 trustee would pursue the Debtor's assets because the value of the assets would have to be four to five times greater than what the Debtor estimates in order for a Chapter 7 trustee to liquidate the assets, pay the Debtor his exemption, pay the costs of sale and other Chapter 7 expenses, and still have something meaningful to distribute to unsecured creditors.  Here, the Debtor is proposing a $1,000 dividend to unsecured creditors and, accordingly, for the Trustee to prevail on this objection, he would have to establish

-9-

that a Chapter 7 trustee would have more than $1,000 to distribute after paying all costs.  There was absolutely no evidence presented from which that conclusion could be drawn.

The Debtor's Amended Plan meets the requirements of §1325(a)(4), and the Trustee's objection to confirmation on the grounds of failure to meet the liquidation analysis test will be denied.

### *Marital Adjustment*

Debtor testified generally but credibly as to the accuracy of the financial documents filed in the case and submitted to the Trustee.  He stated that his wife had changed jobs just the week before trial and that he had not yet seen a new pay stub for her. He also stated that the child support which his wife was entitled to receive had been coming in irregularly due to the fact that her ex-husband's business had closed.  Because the Debtor testified about these changes without providing specific details, the Court considered the testimony as simply explaining some recent changes in the interest of full disclosure rather than an attempt to further modify the Amended Plan.

The Trustee did not cross-examine the Debtor regarding the accuracy of the Debtor's Schedules I and J or the Debtor's B22C. The Trustee asked no questions regarding the actual contribution of the Debtor's spouse to the expenses of the Debtor or the Debtor's

dependents, and did not explore in any way the separate expenses that the spouse might have for herself and her own dependents. Nevertheless, the Trustee argued at the conclusion of the trial that the Debtor should not have taken the marital adjustment at Part III of the B22C.  The Trustee anticipates that if he prevails on this issue and on the _Wiegand_ issue discussed below, he can compel the Debtor to make five years' worth of plan payments and may be able to limit the Debtor's expense deductions in accordance with §1325(b)(3).

The Trustee's argument is based, apparently, not on the inaccuracy of the Debtor's calculations, but on a belief by the Trustee that if a Debtor is married, all income of a non-filing spouse must be considered as income contributed for the support of the Debtor and the Debtor's dependents regardless of how that income is actually spent.  This Court has previously rejected a similar argument by the Trustee.  _See_ _In re Hall_, 2007 WL 445517 _at_ *3 (Bankr. C.D. Ill.).  This Court again rejects the position of the Trustee that, as a matter of law, all income of a non-filing spouse must be included when calculating a debtor's "current monthly income".  _See_ _In re Baldino_, 369 B.R. 858, 860 (Bankr. M.D. Pa. 2007); _In re Shahan_, 367 B.R. 732, 737-38 (Bankr. D. Kan. 2007); _In re Grubbs_, 2007 WL 4418146 _at_ *3 (Bankr. E.D. Va.); _In re Dugan_, 2008 WL 3558217 _at_ *5 (Bankr. D. Kan.).

"Current monthly income" is defined by statute and includes,

-11-

not only income a debtor receives during the six months preceding the month of filing, but also "any amount paid by an entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents . . . ."  11 U.S.C. §101(10A)(B).  Although a debtor's non-filing spouse's income during the six-month pre-filing period must be disclosed at Part I of the B22C, the portion of such spouse's income which is not used on a regular basis for the household expenses of a debtor or debtor's dependents may be subtracted at line 19 of Part III in accordance with the statutory definition of "current monthly income".

This Court has previously described the determination of what part of a non-filing spouse's income is used for a debtor's household expenses and what part is not, as "dicey". <u>Hall</u>, 2007 WL 445517 <i>at</i> *4.  That problematic calculation is not, however, before the Court in this case.  Here, the Trustee does not argue that the Debtor miscalculated or misrepresented how household expenses are divided between himself and his wife.  Rather, the Trustee seeks a blanket determination that, if a debtor is married and living in the same household as his spouse, all of the spouse's income must be included in the determination of "current monthly income" and no marital adjustment is available.

The Trustee has cited no authority for his position.  His position contradicts the plain language of the statute, which

-12-

limits the amount to be included in the calculation to that which
is regularly used for the household expenses of a debtor and his
dependents.  11 U.S.C. §101(10A)(B).  Here, the wife receives child
support and is responsible for the care and custody of children who
are not the dependents of the Debtor.[2]  Schedule J also reflects
expenses which appear be to solely the obligation of the wife.
Further, the non-filing wife is not required to adjust her expenses
to meet the reasonable and necessary standard of scrutiny that the
Debtor's expenses must meet.  *See* 11 U.S.C. §1325(b)(2); Baldino,
369 B.R. *at* 860.  Finally, even if the wife has excess income after
paying all of her bills and supporting her children, that income is
hers and does not become disposable income of the Debtor.  Id.

The Trustee's objection to confirmation of the Amended Plan
based on the Debtor's calculations under Part III of the B22C, and,
specifically, his use of the marital adjustment at line 19, will be
denied.

### *Self Employment Income*

The Trustee's main objection to the Debtor's Amended Plan is

---

[2]

Debtor's Schedule I discloses a household of the Debtor, his
spouse, and three minor children.  This conflicts with Debtor's
B22C wherein the Debtor claims to be in a household of 2 persons.
This discrepancy was not resolved by testimony at trial.  It is
clear, however, that Debtor's spouse is entitled to receive child
support from an ex-husband for several children and, accordingly,
has dependents who are not the dependents of the Debtor.

-13-

based on his objection to the Debtor's use of his net business income rather than his gross business income at Parts II and III of the B22C.  Relying on <u>Wiegand</u>, the Trustee asserts that the B22C form is incorrect to the extent that it provides for a deduction of business expenses when calculating "current monthly income".  The Debtor counters that requiring the use of gross business receipts in the Debtor's income calculation without allowing a corresponding deduction of business expenses unfairly skews the results on the B22C.

In <u>Wiegand</u>, the 9th Circuit Bankruptcy Appellate Panel found that §1325(b)(2) is "plain and unambiguous" and held that "the specificity of §1325(b)(2)(B) controls - business deductions are to be taken from a debtor's current monthly income to arrive at the debtor's disposable income." <u>Wiegand</u>, 386 B.R. *at* 242.  Thus, the <u>Wiegand</u> holding means that business expense deductions are taken "below the line" after current monthly income has been calculated, rather than "above the line" as part of the initial calculation of current monthly income.  Other courts considering the issue have come to the same conclusion. *See* <u>In re Arnold</u>, 376 B.R. 652 (Bankr. M.D. Tenn. 2007); <u>In re Bembenek</u>, 2008 WL 2704289 (Bankr. E.D. Wis.).

When considering construction of a statute, if the statutory language is clear, it must be applied by its own terms unless doing so would lead to absurd results.  <u>U.S. v. Ron Pair Enterprises,</u>

_Inc._, 489 U.S. 235, 241-42, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).
In determining whether statutory language is clear, it must be read
not in isolation but as part of the statutory scheme of which it is
a part.  _Matter of McFarland_, 84 F.3d 943, 946-47 (7th Cir. 1996).
A statute should not be construed in a way that makes part of the
statute meaningless, if that result can be avoided.  _In re Whitaker
Construction Co., Inc._, 411 F.3d 197, 205 (5th Cir. 2005).   The
_Wiegand_ court acknowledged that it was obligated to take a holistic
approach to statutory interpretation to implement the policies
behind the enactment of BAPCPA and to harmonize the provisions of
the Bankruptcy Code.  _Wiegand_, 386 B.R. _at_ 241.

     The _Wiegand_, _Arnold_, and _Bembenek_ courts all found that the
meanings of §101(10A) and §1325(b)(2)(B) were plain and
unambiguous.  _Wiegand_, 386 B.R. _at_ 242; _Arnold_, 376 B.R. _at_ 653-54;
_Bembenek_, 2008 WL 2704289 _at_ *1.  Section 101(10A) requires the
inclusion of all income subject only to specifically stated
exceptions in the calculation of current monthly income.  Section
1325(b)(2)(B) identifies business expenses as deductible from
current monthly income when calculating disposable income.   All
three cases hold that, to the extent the B22C form allows business
expenses to be deducted in the initial calculation of current
monthly income, the Code controls and the conflicting portions of
the form must be disregarded.  _Wiegand_, 386 B.R. _at_ 241; _Arnold_,
376 B.R. _at_ 653-54; _Bembenek_, 2008 WL 2704289 _at_ *2.

-15-

Having reviewed the statutory language at issue and considered the relevant precedent, this Court finds that the calculation of current monthly income on the B22C form requires the inclusion of the gross business income of a self-employed debtor without the allowance of deductions for business expenses. This Court comes to this conclusion reluctantly, however, because this finding requires the Court to ignore part of the context in which the term "current monthly income" is used in the Code.

"Current monthly income" is used in three distinct and important calculations made on the B22C form. As noted above, current monthly income is used to determine disposable income and, in that context, business expenses are clearly provided for as deductions. 11 U.S.C. §1325(b)(2)(B). In the other two contexts in which current monthly income is relevant, however, reconciling the inability to deduct business expenses in calculating current monthly income with the overall statutory scheme is more problematic.

At Parts II and III of the B22C, current monthly income is compared to the median family income of similarly-sized households for a debtor's state. 11 U.S.C. §1325(b)(3) & (b)(4). The purpose of these comparisons is to require a debtor's expense deductions to be limited by statute and to require five years of payments if a debtor's "income exceeds certain monetary thresholds." H.R. Rep. No. 31, 109th Cong. 1st Sess. 102, 318 (2005).

-16-

The so-called "threshold" amounts are median family income amounts published by the U.S. Census Bureau. The U.S. Census Bureau publishes not only its data but also discloses its methodology in collecting and reporting its data and the definitions it uses in making its reports. Germane here is the U.S. Census Bureau definition of income which includes "earnings" and, in turn, its definition of "earnings" which provides in part: "[n]et income from nonfarm self-employment is the net money income (gross receipts minus expenses) from one's own business, professional enterprise, or partnership." *See* "Earnings" *at* http://www.census.gov/population/www/cps/cpsdef.html. A review of the definitions the U.S. Census Bureau relies on in calculating the median family income data used for comparison to a debtor's current monthly income on the B22C form clearly establishes that business expenses are deducted from gross receipts in making the calculation. Thus, if business expenses are not deducted from a debtor's current monthly income before the comparison is made, the comparison is skewed and becomes meaningless, as Debtor here suggests.

Courts must attempt to construe statutes in light of the goals and policies of the statute. Central States Southeast and Southwest Areas Pension Fund v. Bell Transit Co., 22 F.3d 706, 710 (7th Cir. 1994); In re BankVest Capital Corp., 360 F.3d 291, 298 (1st Cir. 2004), *cert. denied* 542 U.S. 919, 124 S.Ct 2874, 159 L.Ed.2d

776 (2004). If the goal of the calculations at Parts II and III of the B22C form required by §1325(b)(3) and (b)(4) is to distinguish debtors with higher than average household incomes from debtors with lower than average household incomes - and this Court believes that is the goal - then that goal is frustrated for self-employed debtors by a construction of the term "current monthly income" which excludes business expense deductions.

Nevertheless, to construe "current monthly income" as allowing the deduction of business expenses as part of the initial calculation would require this Court to disregard the plain language of §1325(b)(2)(B), which clearly makes business expenses a deduction to be taken after current monthly income has been calculated. Thus, neither parties' position fits neatly within all of the requirements for statutory construction. However, §1325(b)(2)(B) is clear that business expenses are deductions from current monthly income - not part of the calculation of what current monthly income is. This Court cannot ignore that clear statutory provision.

Accordingly, as set forth above, this Court will follow Wiegand, Arnold, and Bembenek and find that, in calculating current monthly income, a self-employed debtor must use gross business income and may not deduct business expenses in the calculation. Business expenses are, of course, deductible elsewhere in determining disposable income. The Trustee's Objection to

-18-

Confirmation of the Amended Plan on this issue will be sustained.

### *Confirmation of the Amended Plan*

The Trustee's initial Objection to Confirmation of the Amended Plan contained the allegation that, based on information provided to him, the Debtor and his spouse had income in excess of the amounts shown on Debtor's Amended Schedule I and, therefore, Debtor was not committing all of his disposable income to Plan payments.[3]

With respect to the non-filing spouse's income, the Trustee alleged that the last pay stub provided to him showed monthly income for her which was about $361 more than disclosed on Amended Schedule I.  The Trustee, however, failed to introduce that pay stub or any other evidence at the trial to support his allegations. The Trustee also failed to cross-examine the Debtor on the accuracy of Amended Schedule I.  The Debtor's general testimony about his financial information was sufficient to establish the accuracy of

---

[3]    Neither the Trustee nor Debtor's counsel raised the issue of the relevance of Schedule I in determining Debtor's projected disposable income.  That may be because this Court has previously indicated an intention to follow the line of cases which allow a consideration of Schedule I and do not limit the income side of the projected disposable income calculation to the historical "current monthly income" calculation found on the B22C.  *See* In re Carlton, 362 B.R. 402, 406 (Bankr. C.D. Ill. 2007).   This Court acknowledges, however, a conflicting line of cases which hold that Schedule I is irrelevant and that exclusive reliance on the B22C calculations in determining projected disposable income is mandated.  *See, e.g.* In re Greer, 388 B.R. 889 (Bankr. C.D. Ill. 2008).

Amended Schedule I as to his wife's income and, in the absence of even a question about the wife's information at trial, this Court cannot sustain the Trustee's objection regarding the wife's income.

With respect to the Debtor's income, detailed lists of his gross business receipts and expenses for the months of December, 2007, through April, 2008, were introduced into evidence. The Debtor's income is somewhat of a moving target and determining an accurate monthly average income is difficult. The Trustee has calculated that the Debtor made more than disclosed on Amended Schedule I by using just the December, 2007, and January, 2008, figures. In December, the Debtor netted $715 and, in January, the net was $4,259. The Trustee asserts, therefore, that the Debtor's average net income is $2,487 per month.

The Debtor's attorney countered, however, by asking the Court to look at a longer period of time. In February, the Debtor's net was $4,240, but in March he lost $130. He then netted $1,699 in April. These figures establish the volatility of the Debtor's income and result in an average net of approximately $2,150 per month. The Debtor's attorney pointed out that the $2,150 is a before income tax figure and provided further calculations to demonstrate that the $1,750 shown is an appropriate after-tax income calculation for the Debtor. The Trustee disputed that fact, but admitted that his calculation did not include a deduction for income taxes.

-20-

As set forth above, the Debtor testified credibly about his financial records.   Obviously, it is difficult to calculate an appropriate monthly income figure when the Debtor makes significant amounts of money one month and loses money the next.   Overall, however, the Court finds that the Debtor's numbers are sufficient to justify his proposed Amended Plan.   The Trustee's suggestion to use just two months of business income and expenses when more is available to get a truer picture of Debtor's situation is rejected. *See* <u>Carlton</u>, 362 B.R. at 407.

Because the Court will sustain the Trustee's Objection on the <u>Wiegand</u> issue, the Debtor's applicable commitment period must be extended to five years.   This outcome is mandated because, by increasing Debtor's income at Part I of the B22C form to his gross receipts of $3,000, the calculation at Part II of the B22C yields an annualized income in excess of the applicable family median.[4] However, because the Court will not sustain the Trustee's Objection on the marital adjustment issue, the calculation at Part III of the B22C form continues to yield annualized income below the applicable family median even with the increase resulting from the use of

---

[4]    Debtor did not use a marital adjustment at Part II of the B22C form.   There is some case law support for the adjustment to be made.   *See* <u>Grubbs</u>, 2007 WL 4418146 *at* *5; <u>In re Borders</u>, 2008 WL 1925190 *at* *2-3 (Bankr. S.D. Ala.).   However, because the Debtor did not claim a marital adjustment at Part II, the Court will not consider whether such an adjustment was available to him in recalculating the applicable commitment period.

Debtor's gross rather than net business income.    Therefore, the determination of the Debtor's disposable income will not be based on §1325(b)(3), and Parts IV, V and VI of the B22C do not need to be completed.

The Debtor's Amended Plan will be confirmed on the condition that the term of the Plan is extended an additional 24 months.    The base amount to be paid into the Amended Plan will be increased by $2,400.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ###